UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZIMMER, INC.,

        Plaintiff,

v.                                       CAUSE NO. 3:19-CV-405 DRL-MGG

ZIMMER ELEKTROMEDIZIN GMBH *et al.*,

        Defendants.

## OPINION & ORDER

This dispute concerns the marks Z and ZIMMER used for medical devices in podiatry and sports medicine. Zimmer, Inc. (Zimmer) says it has used the ZIMMER mark since 1927 and the Z mark since 2004. Zimmer claims that a German company, Zimmer Medizinsysteme GmbH, manufactured and its American distributor, Zimmer Medizinsystems Corporation, sold medical devices improperly using its trademarks, thereby causing confusion in the marketplace. The devices at issue are Zimmer GmbH's *enPlusPro* and *SoleoSono*.

Today the German manufacturer (Zimmer GmbH) and the American distributor (Zimmer USA) move to dismiss the complaint for lack of personal jurisdiction. The court afforded the parties time for jurisdictional discovery; and, among other activity, the parties have enjoyed just over a year to hash out the facts related to personal jurisdiction, particularly any contacts the German company and American distributor had with Indiana. On this record, the court has personal jurisdiction over Zimmer USA, but not Zimmer GmbH. The court thus grants the motion to dismiss only in part.

## STANDARD

A motion to dismiss under Rule 12(b)(2) tests the court's ability to exercise its power over the defendant through personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of proving personal jurisdiction over each defendant. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer*

*Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). When a Rule 12(b)(2) motion rests on the submission of written materials, but without an evidentiary hearing, the plaintiff must make a "prima facie case for personal jurisdiction." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020); *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Without an evidentiary hearing, the court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual dispute in the affidavits in favor of the plaintiff." *Tamburo*, 601 F.3d at 700; *accord Purdue*, 338 F.3d at 782 ("plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record").

DISCUSSION

Zimmer brings three claims under the Lanham Act, *see* 15 U.S.C. §§ 1114(1) (infringement), 1125(a) (false designation of origin, passing off, unfair competition), and 1125(c) (dilution), and one claim for trademark infringement and unfair competition under Indiana law.[1] The Lanham Act lacks a special rule for personal jurisdiction, so the court looks to the law of the forum (Indiana) to guide its jurisdictional decision today. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citations omitted).

The court has personal jurisdiction over a defendant to the same extent a state court in Indiana could exercise personal jurisdiction over the defendant. *See id.* Indiana's longarm statute coextends with federal due process, *see id.*; *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006), so the court proceeds directly to the due process analysis, *Mobile Anesthesiologists Chi., LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The court must determine

---

[1] As the plaintiff, Zimmer is the master of its complaint. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1012 (7th Cir. 2021). It has not alleged a contract claim, much less one based on an agreement involving German or European Union-wide trademarks, so the court needn't wade into the late arguments of reply and surreply that debate this point.

2

whether exercising jurisdiction over Zimmer USA and Zimmer GmbH comports constitutionally with due process. *Advanced Tactical*, 751 F.3d at 800 (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

"To comport with federal due process, a defendant must maintain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) (internal quotations omitted); *accord Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Two types of personal jurisdiction exist: general jurisdiction (sometimes called "all-purpose" jurisdiction) and specific jurisdiction (sometimes called "case-linked" jurisdiction). *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Zimmer forfeits general jurisdiction, so the court addresses only specific jurisdiction today.

"Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). As to each defendant, three requirements exist: (1) the defendant's contacts with the forum state must show that it purposefully directed its activities at the state or purposefully availed itself of the privilege of conducting business there, (2) the alleged injury must arise from the defendant's forum-related activity, and (3) exercising personal jurisdictional must comport with traditional notions of fair play and substantial justice. *Curry*, 949 F.3d at 398. With these guideposts in mind, the court turns to Zimmer USA and Zimmer GmbH individually.

    A.  *Zimmer USA.*

        1.  *Zimmer USA Has Case-Linked Minimum Contacts with Indiana.*

Zimmer posits specific jurisdiction on Zimmer USA's offending product sales in Indiana, its website accessible to Indiana customers, and email promotions with Indiana residents. Zimmer USA argues that its Indiana sales represent only a small percentage of its total sales, and that none actually caused confusion for this trademark dispute. Zimmer USA also says its website and email blasts fall short of constitutionally establishing a basis for personal jurisdiction.

Zimmer alleges that Zimmer USA has unlawfully promoted or sold medical devices in the fields of podiatry and sports medicine using Zimmer's trademark rights. Zimmer USA sold two products in podiatry and sports medicine—the *enPulsPro* (which provides radial pulses to deliver energy to soft tissue) and the *SoleoSono* (which provides electrotherapy and ultrasound to soft tissue). From May 2014 to September 2019, Zimmer USA sold $423,634.16 of product in Indiana.[2] Zimmer USA explains that these Indiana sales constituted one percent of its total sales of $39.3 million.

The court's lens proves narrower for specific jurisdiction. Within the context of hundreds of interactions with Indiana customers across products generally that include product sales, extended warranties, repairs, and the like [ECF 65-4], the company had the following contacts related specifically to this suit from 2014-2019 [ECF 65-1]:

- Zimmer USA sold over $85,000 of allegedly infringing product in Indiana, including thirteen *enPuls* and *Soleo* devices and 400 boxes of electrodes.

- Zimmer USA repaired or replaced three *enPuls* products and sold at least four accessories or parts for *enPuls* products in Indiana.

- Zimmer USA sold such product to at least two Indiana customers more than once, indicating a more developed relationship, including one customer during 2019 and another customer with sales in 2018-2019.

Zimmer argues that these actions demonstrate that Zimmer USA purposefully directed its business activities at Indiana (or purposefully availed itself of the right to do business here) and that these business activities relate to this suit's claims—two of the three requirements for specific jurisdiction.

The court agrees. *See, e.g., Curry*, 949 F.3d at 401; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 755, 758 (7th Cir. 2010). The court starts with Zimmer USA's sales activity in Indiana, particularly its sale of products that relate to this suit. "The relevant contacts are those that center on the relations among

---

[2] The parties have not argued that the lookback should be less because of a suit-specific statute of limitations, and fairly so. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984); *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999); *Sanderson v. Spectrum Labs, Inc.,* 227 F. Supp.2d 1001, 1011 (N.D. Ind. 2000), *aff'd,* 248 F.3d 1159 (7th Cir. 2000) (unpublished table decision).

the defendant, the forum, and the litigation." *Advanced Tactical*, 751 F.3d at 801; *accord Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984). "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 930 n.6. Instead, the sales must be directed to the state, *see Curry*, 949 F.3d at 398, and relate to the lawsuit, *see Advanced Tactical*, 751 F.3d at 801.

These sales do—all sales directed to Indiana over a concerted time and involving allegedly infringing products that undergird this trademark suit. These interactions involved more than just a scant sale through the internet. These contacts included sales of expensive medical equipment in Indiana, specifically targeted to sports medicine and podiatry professionals here.

Zimmer USA argues that its Indiana sales only constituted one percent of its total sales during this time period and invites the court to conclude that the number of sales specific to this suit really is zero because none actually caused confusion in the marketplace. Relying on *Advanced Tactical*, the company concludes that these comparatively few sales, and no indication of confusion, mean that it lacks minimum contacts related to this forum and this litigation.

That Zimmer USA sold millions of dollars of products elsewhere may be important to answer the question whether the company can also be haled into other jurisdictions, but it provides little context for discounting its regular sales in Indiana. The sale of thirteen *enPuls* and *Soleo* devices, four accessories or parts for *enPuls* products, and 400 boxes of electrodes over a six-year period in Indiana constitutes minimum contacts—particularly when the claim concerns these specific sales in violation of trademark law. *See Hemi*, 622 F.3d at 755, 759 (sales to one Illinois resident of 300 packs of cigarettes in 2005 and 2007 supported personal jurisdiction for claim of illegal cigarette distribution); *see also Advance DX, Inc. v. Health Point Diagnostix, Inc.*, 2013 U.S. Dist. LEXIS 100348, 6 (S.D. Ind. July 17, 2013) (ten products sold and nine tests returned to the state supported personal jurisdiction). *Advanced Tactical* concerned sales that lacked any connection to the suit. That is a far cry from this case.

5

That this record may not yet show customer confusion changes nothing. Zimmer's ability to prove its claim later doesn't bear on its ability to present a *prima facie* case of personal jurisdiction. *See Curry*, 949 F.3d at 401. Personal jurisdiction over Zimmer USA doesn't depend on whether Zimmer will eventually show that some of the allegedly infringing product caused, or had the likelihood to cause, confusion. Zimmer must show minimum contacts by Zimmer USA with Indiana that relate to its claims, and the company has done so. *See id.*; *Hemi*, 622 F.3d at 759. These contacts weren't random or fortuitous. *See Curry*, 949 F.3d at 398 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)).

The court turns next to Zimmer USA's interactive website. Zimmer argues that the website's shopping function allows Indiana consumers to order product and to ship it directly to Indiana. Zimmer says this shows purposeful contact with the state, particularly so when the website overtly offers products that allegedly infringe its trademarks. Zimmer USA counters that its website, even if interactive, fails to support personal jurisdiction.

"Significant caution is certainly appropriate when assessing a defendant's online contacts with a forum to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." *Curry*, 949 F.3d at 400 (quotations omitted); *accord be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011). "When assessing whether a defendant's commercial operation of a website amounts to purposeful availment, [courts] typically look to factors such as evidence of specific targeting of forum residents and evidence that the website has generated substantial revenue from forum residents." *Motus, LLC v. Cardata Consultants, Inc.*, 23 F.4th 115, __, 2022 U.S. App. LEXIS 1287, 15 (1st Cir. Jan. 18, 2022) (quotations omitted). Zimmer USA maintained an interactive website through which Indiana customers (and others) could purchase allegedly infringing products, including *enPuls* and *Soleo* devices, and have those shipped directly to Indiana. That said, unlike most cases in which such a website has proven material to the analysis of minimum contacts, no evidence today shows that any Indiana sale of suit-related product occurred through this

6

website or that the company specifically targeted Indiana consumers through it. *Compare Curry*, 949 F.3d at 399, *and Hemi*, 622 F.3d at 755, 757-58, *with Advanced Tactical*, 751 F.3d at 803; *see also Motus*, *supra* at 15-16; *Admar Int'l, Inc. v. Eastrock, LLC*, 18 F.4th 783, 787 (5th Cir. 2021).

Zimmer advances a more nuanced point: that trademark infringement occurred because Zimmer USA offered to sell its products using a name, device, or false designation of origin on this website that likely caused confusion. *See* 15 U.S.C. § 1125(a)(1)(A). The website involves a high level of interactivity and permits a consumer to consummate an entire order. Zimmer says Zimmer USA offered infringing goods through the website—in short, that the company used the mark in commerce to market or to offer the infringing goods for sale through the website—and therein lies the harm regardless of any actual sale. The premise is sound: intentional tortious conduct that causes an injury in a given state can give rise to specific jurisdiction, *see Calder*, 465 U.S. at 789, and trademark infringement proves a "paradigmatic example" because Zimmer USA need not have known it was infringing another's mark for its conduct to be actionable, *Motus*, 2022 U.S. App. LEXIS at 17. The finishing stroke of this argument falls short, however. Zimmer points to no evidence that Zimmer USA knew, at the time of its actionable conduct, that Zimmer existed or that Zimmer existed in Indiana.[3] *See id.* at 18. The website thus adds nothing to the jurisdictional calculus in this case.

Zimmer last argues that Zimmer USA sent thirteen emails to Indiana recipients about its podiatry and sports medicine products, including the *enPuls* and *Soleo* devices, which canvassed tens of thousands of recipients in Indiana and were opened by no less than 4,891 recipients in Indiana— something the company purposefully tracked. On their own, mass mailings are less indicative of directed activity because they are generalized in nature and engagement depends "wholly on activities out of the defendant's control." *Advanced Tactical*, 751 F.3d at 803 (citation omitted). "As a practical

---

[3] Presuit cease and desist letters were apparently sent according to the complaint, but Zimmer never argues this point or explains why these letters would be enough to satisfy the needs of jurisdictional analysis.

7

matter, email does not exist in any location at all; it bounces from one serve to another, it starts wherever the account-holder is sitting when she clicks the 'send' button, and it winds up wherever the recipient happens to be at that instant. The connection between the place where an email is opened and a lawsuit is entirely fortuitous." *Id.*

On the other hand, purposeful advertising in the forum state or establishing channels for providing regular advice to customers in the forum state will fortify an intent to serve the state's market. *See, e.g., Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992). "It may be different if there were evidence that a defendant in some way targeted residents of a specific state, perhaps through geographically-restricted online ads." *Advanced Tactical*, 751 F.3d at 803. It may also be different when the evidence shows that a marketing campaign has created business in that particular state. *See, e.g., uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010).

This record eludes such findings. The communiques here weren't limited to Hoosiers. The emails went to past customers and subscribers, but not unlike those in *Advanced Tactical*. Zimmer USA tracked not just how many Indiana customers received them, but how many opened them, yet these clickthrough, bounce, and unsubscribe metrics are common datapoints for companies that alone don't demonstrate forum-targeted contacts. It might have been different if the promotions here specifically targeted Indiana customers with the business design of advancing a marketing strategy, promoting sales, or other consumer engagement, except that no business on this record came from these emails, nor seemingly engagement otherwise with past or new customers in Indiana. It might well have been different too if the emails used allegedly infringing trademarks to promote sales or foster confusion in the marketplace, but once more the record never says these emails improperly used a protected mark.

That said, the sales here are enough to establish personal jurisdiction over Zimmer USA. In sum, Zimmer has presented sufficient evidence that Zimmer USA purposefully directed its business to Indiana, and that its contacts relate to the claims here. It sold expensive and highly specialized

products to Hoosiers from which Zimmer's claims arise. The only question that remains is whether exercising personal jurisdiction over Zimmer USA offends traditional notions of fair play and substantial justice.

> 2. *Personal Jurisdiction over Zimmer USA Doesn't Offend Traditional Notions of Fair Play and Substantial Justice.*

"Due process requires that potential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions." *Hemi*, 622 F.3d at 758 (quotation omitted). "[When] a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477; *see also Curry*, 949 F.3d at 402. To assess the reasonableness of exercising jurisdiction, the court considers the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution, and the shared interest of the several States in furthering fundamental substantive social policies. *See Hemi*, 622 F.3d at 759 (quoting *Purdue*, 338 F.3d at 781). "[T]he weaker the defendant's contacts with the forum state are, the less likely it is that exercising jurisdiction over that defendant is appropriate." *Id.* at 759-60.

Zimmer USA argues that it would be expensive and burdensome to send employees to Indiana for this proceeding and that the time associated with this task would take away from business operations. Further, the company argues that Indiana lacks an interest in this controversy because the claims rest on federal law and because Zimmer serves as the only link to the state. Zimmer USA says this case has a negligible effect on the interstate judicial system and no effect on the shared interests of the States because, once more, the claims stem from federal law.

Zimmer USA offers only a general statement that exercising jurisdiction today would be "extremely burdensome and expensive" for the company, noting that the company's president and

9

other employees may need to travel here to testify at trial. There is no meaningful precision from Zimmer USA in this statement. In truth, the cost of litigation can be substantial in time and expenditure no matter the forum; and the reality of trial (the company's focus on this record) will prove demanding in both time and expense whether here or in Zimmer USA's home state (California). The burden of travel cannot be understated in a pandemic, but techniques have been developed and widely used to reduce cost and travel in the pretrial process, and the same for trial will not be meaningfully different if the defendant must drive for a trial day or fly a modest five hours.[4]

Indiana also has an interest in deciding this controversy. The claims here are not just based on federal law, but also Indiana law—so there is a duality of interests. Moreover, to the extent that trademark infringement has occurred, that injury has been most strongly borne here where Zimmer preserves its intellectual property right. Indiana has a manifest interest in providing its citizens with a convenient forum for redressing trademark injuries inflicted by out-of-state actors. *See, e.g., Eli Lilly & Co. v. Mylan Pharms., Inc.*, 96 F. Supp.3d 824, 834 (S.D. Ind. 2015).

As *Hemi* and *Curry* instruct in similar cases involving sales directed to a particular state, the risk and foreseeability of being haled into court in that state stem from the benefits of such purposeful commercial activity. Zimmer USA has benefited from Indiana and its customers—both in terms of its market (earning money from allegedly infringing product) and from its laws (through "the enforcement of contracts, the defense of property, the resulting formation of effective markets"). *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1029 (2021). Though Zimmer USA has no physical presence in Indiana, much like the defendant in *Curry*, 949 F.3d at 402, it has structured its business operations and marketing so that it can easily promote allegedly infringing products and serve

---

[4] Zimmer USA says it has fourteen employees, including nine in California, three in Pennsylvania, and one each in Massachusetts and Tennessee. The California employees would have the farthest to travel, but the company's coast-to-coast footprint underscores that travel for employees would not be meaningfully inconvenient or costly.

the state's customers. Asking Zimmer USA to defend against its alleged wrongdoing in a forum in which it has thus benefitted isn't constitutionally unfair.

In asking the court to find that exercising jurisdiction violates due process, Zimmer USA "wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure." *Curry*, 949 F.3d at 402 (quoting *Hemi*, 622 F.3d at 760). Though true that the States share an interest in the protection of property interests, and that the interest at stake here proves paramount not just in Indiana but also in California, the other factors demonstrate that exercising jurisdiction today would not be unreasonable or substantially unjustified. Accordingly, the court denies the motion to dismiss this suit vis-à-vis Zimmer USA.

  B. *The Court Lacks Personal Jurisdiction over Zimmer GmbH.*

Zimmer GmbH is a German company that manufactures and sells medical products to distribution companies around the world. Zimmer GmbH wholly owns the subsidiary Zimmer USA. Zimmer USA purchases and sells Zimmer GmbH's products in this country. The parties agree that Zimmer GmbH owns no land in Indiana, has no office in Indiana, has no designated agent in Indiana, and otherwise sells no product in Indiana.

"Each defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790; *Keeton,* 465 U.S. at 781 n.13. When "corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other. . . . [When] two corporations are in fact separate, permitting the activities of the subsidiary to be used as a basis for personal jurisdiction over the parent violates this principle and thus due process." *Cent. States*, 230 F.3d at 944; *accord LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 968 (Ind. 2006) ("We start with the presumption that a parent and a subsidiary are independent entities and a subsidiary's contacts with the forum are not attributed to the parent

11

corporation for jurisdictional purposes."). Finding that jurisdiction exists over Zimmer USA thus doesn't mean it exists over Zimmer GmbH.

That said, a product manufacturer (like Zimmer GmbH) may be subject to a particular forum's jurisdiction when it "intended to serve a broader market and [] derive direct benefits from serving that market." *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1125-26 (7th Cir. 1983), *cert. denied sub nom.*, *United Garment Mfg. Co. v. Nelson by Carson*, 465 U.S. 1024 (1984); *accord J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("a defendant may in an appropriate case be subject to jurisdiction without entering the forum . . . as where manufacturers or distributors seek to serve a given State's market") (quotations omitted); *Giotis v. Apollo of Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir. 1986) ("A seller at the head of a distribution network thus satisfies the requisite foreseeability of due process where it delivers its products in the stream of commerce with the expectation that these products will be purchased by consumers in the forum state.") (quotations, brackets, and citations omitted).

This stream of commerce theory, originating from *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287-98 (1980), remains the law, though questions have circled, *see J. McIntyre Mach.*, 564 U.S. at 882; *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112, 117 (1987); *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020); *Jennings v. AC Hyrdaulic A/S*, 383 F.3d 546, 550 n.2 (7th Cir. 2004). This theory of jurisdiction typically applies in product liability cases because downstream sales to consumers bear on the relationship among the defendant, forum, and litigation, particularly because the product's development or sale has harmed a consumer in the forum in a way that satisfies constitutional standards for jurisdiction. *See J.S.T. Corp.*, 965 F.3d at 576; *see, e.g., Dehmlow*, 963 F.2d at 943, 947; *Mason v. F. LLI Luigi & Franco Dal Maschio Fu G.B. s.n.c.*, 832 F.2d 383, 384, 386 (7th Cir. 1987); *Nelson*, 717 F.2d at 1122, 1124-25; *cf. Honeywell v. Metz Apparatewerke*, 509 F.2d 1137, 1142 (7th Cir. 1975) (patent case). The court of appeals has inkled (though never seemingly held) that trademark law works similarly given that "consumer confusion can be at the heart of the

underlying claim," as the claim today is. *J.S.T. Corp.*, 965 F.3d at 576. Indeed, the consumer sales in this trademark suit share a relationship among the defendant, Indiana, and this litigation precisely because the downstream consumer sales serve as the very basis for the claim of consumer confusion and trademark infringement that, as the claim goes, caused harm in this forum. *See id.*

The court thus applies the stream of commerce theory today. Under this theory, a manufacturer purposefully directs its business to a forum when its distributor targets that forum and the manufacturer knows that its product will reach that forum in the stream of commerce, *see Nelson*, 717 F.2d. at 1126; *Dehmlow*, 963 F.2d at 947, so long as the sales relate to the litigation, *see J.S.T. Corp.*, 965 F.3d at 576. The manufacturer must have that knowledge or expectation that its products will be directed to a forum. Under these circumstances, a manufacturer "should reasonably anticipate being subject to suit in any forum within that market where their product caused injury." *Nelson,* 717 F.2d at 1126. "[W]hen a defendant takes steps to reach consumers in a forum state, it has created a relationship with the forum state that has special relevance to the litigation at issue." *J.S.T. Corp.*, 965 F.3d at 576.

Zimmer argues that Zimmer GmbH knowingly contracted with Zimmer USA to introduce its products into the United States, and received money through this arrangement, and that this relationship satisfies due process. Relying on *Honeywell*, Zimmer says Zimmer GmbH purposefully availed itself of the benefit of Indiana by injecting its products into the national stream of commerce via Zimmer USA.[5]

---

[5] In *Honeywell*, 509 F.2d at 1142, a German manufacturer allegedly infringed on the plaintiff's patent through the help of an American distributor by selling its product nationally, including to Illinois. The court concluded that the manufacturer's intentional sale of its product to the distributor for national distribution satisfied due process. *Id.* at 1142-44. But *Honeywell*'s conclusion was based on more than just a manufacturer knowing that its distributor would sell its product nationally. The court determined that the manufacturer knew of the patents and explicitly provided its distributor the means to invade the American market: "[S]hipments were made in the knowledge that, under the agreement, distribution would inevitably take place in the United States, and to that end, [the manufacturer] even furnished [the distributor] with instruction booklets in English. [The manufacturer] agreed to assist in publicizing the [product]; [the manufacturer] had the right to inspect and

13

Nothing indicates on this record that Zimmer GmbH knew its distributor would sell product within Indiana, much less using an allegedly violative trademark. Nothing demonstrates that Zimmer GmbH had the expectation, after delivering its product to its distributor, that Zimmer USA would sell product nationally, including in Indiana. That may well be true, but no evidence exists of it on this record. Zimmer points to statements from Zimmer GmbH's representative that the company neither sells nor markets its products directly to customers in Indiana and that all sales and marketing occur only through third-party distributors or through Zimmer USA, but these statements fall short of establishing Zimmer GmbH's knowledge of Indiana-directed sales. No distribution agreement or other document establishes this expectation on the part of the German company. The parent and subsidiary are separate entities. They don't share any employees, bank accounts, financial records, accounting services, or IT systems. Their websites and social media platforms are likewise operated and maintained independently. And Zimmer USA independently managed day-to-day operations such as sales, marketing, and product services. The court need not go beyond the stream of commerce theory to consider any additional gloss or requirement from *Asahi* because Zimmer cannot meet even this initial showing. *See Asahi*, 480 U.S. at 112, 117; *J.S.T. Corp.*, 965 F.3d at 575; *Jennings*, 383 F.3d at 550 n.2.

Despite having over one year to engage in jurisdictional discovery (August 2020 to September 2021), Zimmer has not made a *prima facie* showing of contacts by Zimmer GmbH with Indiana, or that Zimmer GmbH knew Zimmer USA would sell or distribute its products to Indiana. Unlike in *Nelson*, 717 F.2d at 1126-27, where a foreign manufacturer knew that its products were distributed for sale in a national department store and thus could foreseeably be haled into court in a state with that

---

obtain information about [the distributor]'s business affairs; [the manufacturer] agreed to indemnify [the distributor] for patent infringement claims; and [the distributor] received credit against invoices from [the manufacturer] for after-sale repairs performed in the United States." *Id.* at 1142. No such evidence exists on this record.

store, the distribution system of these products seems more fortuitous from the German company's perspective—and it is this defendant's activity that serves as the right jurisdictional lens, not that of another party. *See, e.g., Jennings*, 383 F.3d at 551. Zimmer requests more time for discovery, but more than a year was plenty. The parties said before that jurisdictional discovery had concluded [ECF 62]. Though the court has jurisdiction over Zimmer USA, it lacks jurisdiction over Zimmer GmbH.

## CONCLUSION

For these reasons, the court GRANTS Zimmer Inc.'s motion to seal [ECF 64], DENIES the motion to dismiss as to Zimmer USA, and GRANTS the motion as to Zimmer GmbH [ECF 63].

SO ORDERED.

April 18, 2022                                                  *s/ Damon R. Leichty*
                                                                Judge, United States District Court